USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/12/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ASAD GILANI,

                             Plaintiff,

-against-

HEWLETT-PACKARD COMPANY, MARK
ANGAROLA, TIM COWAN, AND LISA
MINCAK,

                            Defendants.

15-CV-5609 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Asad Gilani ("Plaintiff") initiated this lawsuit on July 10, 2015 alleging discrimination on the basis of religion, national origin, and age in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 – 131 (the "NYCHRL").[1] Plaintiff asserted his claims against Mark Angarola, Tim Cowan, Lisa Mincak (collectively, the "Individual Defendants"), and Hewlett-Packard Company ("HP") (collectively, "Defendants").

---

[1] Plaintiff thereafter twice amended his complaint on November 2, 2015 and June 27, 2016. (*See* ECF Nos. 7, 36.) The June 27, 2016 Second Amended Complaint (the "SAC") is the operative complaint.

Before the Court is Defendants' motion to dismiss, for judgment on the pleadings, and for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c), and 56, respectively ("Defendants' Motion"). (*See* Defs. Brief in Support of their Motion ("Defs. Br") (ECF No. 76) at 1-2.) For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

All facts are taken from the Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs. 56.1") (ECF No. 77), Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Plf. 56.1") (ECF No. 69), and a review of the record.[2]

On May 15, 2011, HP entered into a statement of work with Insight Global, a staffing agency, whereby Insight Global agreed to provide services (the "SOW") to HP "in order to fulfill the objectives of providing implementation and support Services to [Merrill Lynch/Bank of America]" (the "BoA Project"). (*See* Declaration of Mark Angarola ("Angarola Decl.") (ECF No. 78), Ex. 1 ("SOW") §1.2.)[3] The SOW was entered into based on a pre-existing agreement between HP and Insight Global. (*Id.*)[4] Pursuant to the SOW, Insight Global would provide "knowledgeable

---

[2] Defendants' Rule 56.1 contains only 12 purportedly undisputed material facts. (*See generally* Defs. 56.1.) Plaintiff disputes each of the facts contained therein. (*See* Plf. 56.1.) None of the parties were deposed in connection with the issue relevant to this Motion. Instead, this Court granted limited discovery in the form of specific interrogatories. Thus, to resolve this motion, the Court exercises its discretion to perform a searching review of the record to ascertain what facts are undisputed. In doing so, the Court has considered the affidavits of the individual defendants, Plaintiff's declaration in opposition, the interrogatory responses provided to the Court, and any other documents attached to the parties' submissions. *See* Fed. R. Civ. P. 56(c); *see also Commercial Data Servs, Inc. v. Int'l Bus. Mach. Corp.*, 262 F. Supp. 2d 50, 57-60 (S.D.N.Y. 2003) (considering declarations or affidavits, pleadings, and interrogatory responses, among others, on motion for summary judgment).

[3] Plaintiff objects to this Court's consideration of the SOW on this Motion because it has been redacted. (*See* Plf. 56.1 ¶2.) This Court need not read the entire unredacted SOW to ascertain the facts relevant to this Motion. Regardless, as Plaintiff points out in his Opposition, a determination of whether an entity is an individual's employer for purposes of Title VII and the ADEA should not be rendered on contract language alone. *Lima v. Addeco*, 634 F. Supp. 2d 394, 399 (S.D.N.Y. 2009) (noting that the term employer must be viewed "functionally, to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment")

[4] Plaintiff also objects to Defendants' failure to produce a copy of the Agreement between Insight Global and HP. (*See* Plf. 56.1 ¶2.) Such agreement is not necessary for resolution of this Motion.

2

staff experienced in the technologies" to "provide support functions for HP's better client enrichment program." (*Id.* at Attachment 1.) The SOW permitted HP to "request the replacement or removal of Personnel assigned to the Project with or without cause . . . ." (*Id.* at §2.11.)

In November of 2011, Plaintiff was contacted by Sheena Balfour at Insight Global to gauge his interest in a project manager position with HP for the BoA Project. (*See* Plaintiff's Declaration in Opposition to Defendants' Motion ("Plf. Decl.") (ECF No. 68) ¶6.) Plaintiff sent in his resume and was thereafter asked to interview with Richard Flaherty, an HP employee, and Tim Cowan, a consultant for the BoA Project and President for Spider Technologies, a company specializing in information technology and services. (*See* Plf. Decl. ¶¶13, 16, Ex. 1; *see also* Declaration of Tim Cowan ("Cowan Decl.") (ECF No. 79) ¶¶2-3.) Plaintiff was selected for the position and entered into a contract employee agreement with Insight Global, for HP, dated November 28, 2011 (the "Employment Agreement"). (*See* Declaration of Lawrence J. Del Rossi ("Del Rossi Decl."), Ex. 1 ("Empl. Agmt.") (ECF No. 80).)[5]

Pursuant to the Employment Agreement, Plaintiff would be paid at a rate of $75.00 per hour for his services and $75.00 per overtime hour. (*Id.* at 1.) Plaintiff contends that HP approved and set his hourly rate, an assertion Defendants dispute. (*Compare* Plf. Decl. ¶8 *with* Cowan Decl. ¶7.) Defendants contend that they only approved the rate at which Insight Global would bill HP for Plaintiff's services, not the rate at which Plaintiff would be paid by Insight Global. (*See* Cowan Decl. ¶7; Defs. 56.1 ¶7.) Ultimately, Plaintiff agrees that he was paid by Insight Global and not HP. (*See* Del Rossi Decl., Ex. 2 ("Plf. Rog. Resp.") (ECF No. 81) at Rog. 6, 8, 14.) Insight Global,

---

[5] Plaintiff contests the validity of the Employment Agreement, as the version he executed contained his initials on each page. (*See* Plf. 56.1 ¶1.) Plaintiff does not contend that the signature contained on the last page of the Employment Agreement is not his, and otherwise cites to sections of the Employment Agreement in support of his opposition to Defendants' Motion. (*See* Plaintiff's Brief in Opposition to Defendants' Motion ("Plf. Br.") (ECF No. 67) at 5-6.) Consequently, the Court will consider the Employment Agreement as a valid agreement between Plaintiff and Insight Global for purposes of this Motion.

not HP, provided employment benefits. (*Id.* at Rog. 13.)

The Employment Agreement states that Plaintiff "acknowledges that he/she is employed by Insight Global for an indefinite period of time and on a terminable-at-will basis." (*See* Empl. Agmt. ¶1.) The Employment Agreement further states that it would terminate, *inter alia*, if within the discretion of either Insight Global or HP, it was determined that Plaintiff's services "[were] no longer needed or desired for any reason", (*id.* ¶3), "or in the event that [HP] for any reason discontinues payment to Insight Global with respect to [Plaintiff]", (*id.* ¶16.) Plaintiff admits that he did not identify HP as his employer on his taxes. (*See* Plf. Rog. Resp. at Rog. 15.)

Plaintiff arrived to his first day of work at a Bank of America location. (*See* Plf. Decl. ¶13.) According to Plaintiff, Cowan told him that he was required to work at this location three days a week. (*See* Plf. Rog. Resp. at Rog. 12.) Though the project was on-site at Bank of America, Plaintiff contends that he was assigned to an office that "was specifically marked as an HP office with the HP Logo, contained only HP employees, contained only HP supplies and equipment, and Plaintiff was not permitted to work in another location unless he had express permission from Tim Cowan." (*See* Plf. 56.1 ¶10; Plf. Decl. ¶¶ 25-26.) Defendants contest this by merely stating that Plaintiff did not work at an HP site or office. (*See* Defs. 56.1 ¶10; Cowan Decl. ¶9; Angarola Decl. ¶12.)

Plaintiff contends that as soon as he started working, he was required to undergo 120 hours of "New Hire Training", which was conducted online, and discussed "the work environment, HP Employee Policies, Open Door Policy, Global Human Rights, Hours Report Policy and Tools." (*See* Plf. Decl. ¶38.) Defendants' position is that "HP has standard onboarding processes and training for new HP employees, tailored to each employee's position" and that such training was not provided to Plaintiff. (*See* Angarola Decl. ¶¶8-9.) Plaintiff further contends that Flaherty and

4

Cowan assigned him projects. (*See* Plf. Decl. ¶28; Plf. 56.1 ¶8; Plf. Rog Resp. at Rog. 7.) Moreover, he was required to attend weekly one-on-one meetings with Flaherty to discuss the quality of his work product, complete 'active project reports', and attend mandatory HP staff meetings. (*See* Plf. 56.1 ¶8; Plf. Decl. ¶¶28-30.) He was also told the manner in which to perform his projects, which included direction such as: which equipment to use to complete a project, alterations in his work product, and changes in his choices on shipping companies to use for certain assignments. (*See* Plf. 56.1 ¶8; Plf. Decl. ¶33.) Defendants contend that "Plaintiff was expected to exercise independent judgment and use his discretion in completing the projects." (Defs. 56.1 ¶8; Anarola Decl. ¶11; Cowan Decl. ¶8.) Plaintiff maintains that he was also assigned a mentor located in Plano, Texas, (*see* Plf. Decl. ¶28), and, to complete his work, was provided an HP laptop and cellphone, (*see* Angarola Decl. ¶10; Del Rossi Decl., Ex. 3 (ECF No. 82) ("HP Rog. Resp.") at Rog. 1.)

Plaintiff was also required to create timesheets that tracked the amount of time he worked on a particular project. Such timesheets were submitted to Insight Global and HP. (*See* Employment Agreement ¶5; Cowan Decl. ¶11; Plf. Decl. ¶47, Ex. 2 ("Anargola Rog. Resp.") at Rog. 1, 4.) HP required copies of these timesheets for their approval. (Angarola Rog. Resp. at Rog. 1, 4.) Ultimately, Plaintiff was terminated on March 30, 2012 for failure to timely submit such records. (*See* Plf. Decl., Ex. 3 ("Cowan Rog. Resp.") at Rog. 5; Cowan Decl. ¶12; Angarola Decl. ¶16-18.) Plaintiff maintains that he received notice of his termination from Cowan on behalf of Flaherty, not Insight Global, (*see* Plf. Decl. ¶49), though Defendants argue to the contrary, (*see* Cowan Rog. Resp. at Rog. 11.) Nevertheless, Plaintiff contends that afterward, he stopped receiving payment from Insight Global, was not transferred to another assignment by Insight Global, and did not hear from Insight Global until he reached out to confirm that he was fired.

(*See* Plf. Decl. 51; Plf. Rog. Resp. at Rog. 11 ("I asked Insight Global to submit my resume with any staffing opportunities).)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))). Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

## II. Title VII and ADEA – Employer[6]

The sole issue before the Court is whehter HP was Plaintiff's employer for purposes of Title VII and the ADEA. Defendants claim that under either the common law agency theory, or

---

[6] Defendants also seek dismissal of the Title VII and ADEA claims against the Individual Defendants as a matter of law. (*See* Defs. Br. at 9-10.) In light of Plaintiff's acknowledgement that the Second Circuit explicitly foreclosed individual liability under either Title VII or the ADEA, (*see* Plf. Br. at 2), the Court summarily dismisses these claims as against the Individual Defendants. The fact that Plaintiff disagrees with well-settled Second Circuit precedent is of no moment. Defendants' Motion is granted in that regard.

Defendants also seek dismissal of Plaintiffs' NYHRL and NYCHRL claims as against all Defendants. (*See* Defs. Br. at 10-11.) Plaintiff's Opposition fails to address Defendants' arguments to that effect. (*See* Plf. Br. at 12-27.) Indeed, Plaintiff's entire Opposition focuses solely on that portion of Defendants' Motion that seeks summary judgment on Plaintiff's Title VII and ADEA claims. (*Id.*) Defendants therefore seek dismissal of the state-based claims on the grounds of abandonment. Claims are considered abandoned if a plaintiff fails to address or oppose a defendant's motion seeking their dismissal. *City of Perry, Iowa v. Proctor & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016); *Moore v. City of New York*, 15-CV-6600 (GBD) (JLC), 2018 WL 3491286, at *14 (S.D.N.Y. July 20, 2018) (dismissing state law claims regarding which plaintiff failed to oppose the arguments for dismissal), *report and recommendation adopted* 2018 WL 4043145 (Aug. 7, 2018); *Tulino v. City of New York*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at *2 (S.D.N.Y. May 19, 2016) (dismissing claims unaddressed in plaintiff's opposition as

the joint-employer theory, the evidence demonstrates that HP was not Plaintiff's employer. (*See* Defs. Br. at 11-20.) As the employment contract indicates that Plaintiff was formally employed by Insight Global, not HP, the Court declines to consider the common law theory of agency and instead renders the following decision on the joint-employer doctrine alone.

Liability under either Title VII or the ADEA will only lie where there was an employer-employee relationship at the time of the alleged unlawful conduct. *See Kern v. City of Rochester*, 93 F.3d 38, 44-45 (2d Cir. 1996); *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006); *Laurin v. Pokoik*, No. 02-CV-1938 (LMM), 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004) (term 'employer' "construed under Title VII and the ADEA in the same way"). Where a plaintiff attempts to "assert employer liability against an entity that is not formally his or her employer", he must meet either the "single employer doctrine" or the "joint-employer" doctrine.[7]

---

abandoned); *Dawson v. City of New York*, No. 13-CV-5956 (JMF), 2014 WL 5020595, at *3 (S.D.N.Y. Oct. 8, 2014). Such a result is warranted despite Plaintiff's *pro se* status, as his opposition indirectly indicates that he agrees that claims against, at least the individual defendants should be dismissed. (*See* Plf. Br. at 2 (noting that individual defendants are entitled to dismissal – at least under Title VII and ADEA).) In light of Plaintiff's failure to address the arguments for dismissal of the state law claims against either the Individual Defendants or HP, his claims are deemed abandoned and summarily dismissed. Defendants' Motion is granted in this respect as well.

Thus, the only issue before the Court is whether Defendants are entitled to summary judgment on Plaintiff's Title VII and ADEA claims.

[7] Plaintiff argues that this Court must assess the common law agency test first. (*See* Plf. Br. 14-21.) In support thereof, Plaintiff cites *Guilino*, 460 F.3d at 371-72 for the proposition that at least four tests exist to assess whether a company is an employer, and a district court's failure to assess at least all four requires reversal. (*Id.* at 14.) This Court disagrees. While *Gulino* necessarily concluded that there were multiple theories under which a company or organization can be considered an employer for purposes of Title VII, *see Gulino*, 460 F.3d at 371, it is evident that, under the circumstances presented herein, Insight Global was Plaintiff's formal employer, (*see* Empl. Agmt. ¶1), and thus, HP's status with respect to employment of Plaintiff would be dependent on the doctrine which assesses the viability of a second, constructive employer. *See Gulino*, 460 F.3d at 378 (noting that the joint employer doctrine is applicable "where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity"); *see also Knight v. State Univ. of New York at Stony Brook*, 880 F.3d 636, 642 (2d Cir. 2018) (noting that the joint employer doctrine "looks to the relationship between two possible employers when 'an employee' is 'formally employed by one entity', and seeks to impose liability on another").

Assuming this Court did apply the common law agency test, however, it would be of no use to Plaintiff. Plaintiff has failed to adduce evidence to raise an issue of fact on renumeration. Plaintiff's attempts to persuade this Court that the Second Circuit no longer considers direct or indirect renumeration as a threshold inquiry, (*see* Plf. Br. at 17), are unavailing. *Gulino* itself makes clear that there be a "threshold showing that [the company] hired and compensated" a plaintiff. *Gulino*, 460 F.3d at 377, 379 (also quoting *Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999) for proposition that to assess this threshold inquiry, courts "look *primarily* to whether

*Shiflett v. Scores Holding Co., Inc.*, 601 F. App'x 28, 30 (2d Cir. 2015) (summary order) (quoting *Arculeo v. On-Site Sales &Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005)). The "single employer" doctrine is inapplicable where, as here, there is no indication that the two corporations—here, Insight Global and HP—are "separate corporations under common ownership and management." *Id.* (quoting *Arculeo*, 425 F.3d at 198 for description of single employer doctrine).

The joint-employer doctrine holds that "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo*, 425 F.3d at 198. Assessment of the joint-employer doctrine is particularly prudent in situations of "temporary employment or staffing agencies and their client entities." *Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *16 (S.D.N.Y. Dec. 2, 2013), *subsequently aff'd sub. nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir 2015); *see also Liotard v FedEx Corp.*, No. 14-CV-2083 (NSR), 2016 WL 1071034, *5 (S.D.N.Y. Mar. 17, 2016) (noting that joint employer doctrine particularly relevant in staffing agency circumstances).

Though the Second Circuit has not articulated "a test for what constitutes joint employment in the context of Title VII", *see Arculeo*, 425 F.3d at 199 n. 7; *Shiflett*, 601 F. App'x at 30, it has held that such a finding requires "sufficient evidence of immediate control over the employees,"

---

a plaintiff has received direct or indirect renumeration from the alleged employer") (emphasis added). In *Gulino*, the Court found that the SED was not plaintiffs' employer because the BOE "set the baseline qualifications" for the position, "hired, promoted, demoted, and fired" individuals in that position and resolved issues of "tenure, pay, and benefits." *Id.* Similar to *Gulino*, it was Insight Global, not HP that "set the baseline qualifications for the position," were required to find and hire "knowledgeable staff experience in the technologies", (*see* Angarola Decl., Ex. 1 at 12) and provided benefits, (*see* Plf. Rog. Resp. at Rog. 13 ("Insight offered Medical benefits").) Critically, Insight Global, not HP provided direct renumeration to Plaintiff. (*See* Plf. Rog. Resp. at Rog. 8 (acknowledging that HP did not pay him), Rog. 6 (acknowledging that earning statements reflected that Insight Global paid him), at Earning Statements (reflecting Insight Gloval's address as payor of paycheck)).

9

*Clinton's Ditch Co-op Co. v. NLRB*, 778 F.2d 132, 138 (2d Cir. 1985). Five factors bear on the immediate control determination: "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Liotard*, 2016 WL 1071034, at *4 (quoting *AT&T v. NLRB*, 67 F.3d 446, 451 (2d Cir. 1995); *see also Shiflett*, 601 F. App'x at 30 ("[F]actors courts have used to examine whether an entity constitutes a joint employer of an individual include 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.").

Relevant to the inquiry here, "[i]n the temporary employment context, at common law, the status of a person employed under such circumstances would be determined under the loaned servant doctrine, which provides that an employee directed or permitted to perform services for another 'special' employer may become that employer's employee while performing those services." *Liotard*, 2016 WL 1071034, at *5 (quoting *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F.Supp. 344, 349 (S.D.N.Y. 1984) *aff'd sub nom. Aharnore v. Merrill Lynch*, 770 F.2d 157 (2d Cir. 1985)) (internal quotations and alterations omitted).

In large part, Defendants' Motion relies on the language of the Employment Agreement and the SOW, only, with little, if any citations to facts that analyze the functioning relationship between Plaintiff and HP.[8] (*See* Defs. Br. 14-20.) Courts have cautioned against analysis of this issue on such evidence. *See Lima*, 634 F. Supp. 2d at 399 (noting that the term employer must be viewed "functionally, to encompass persons who are not employers in conventional terms, but who

---

[8] The facts Defendants actually assert are conclusory, stock language, used in an attempt to dispute the joint-employer doctrine factors, but Defendants fail to articulate concrete examples demonstrating HP's lack of control over Plaintiff's work. Moreover, even when Defendants do site specific examples, such examples are directly disputed by Plaintiff's version of the facts, the resolution of which would require this Court to make impermissible credibility assessments. *See Fincher v. Deposit Tr. And Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010).

nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment"); *Williams v. Victoria's Secret*, No. 15-CV-4715 (PGG) (JLC), 2017 WL 384787, at *6 (S.D.N.Y. Jan. 27, 2017) (contractual language without "contextual evidence to establish that [plaintiff] was not one of its employees" insufficient). Such a failure to demonstrate lack of control by HP over Plaintiff's work defeats Defendants' ability to meet their summary judgment burden.

Even if they had, Plaintiff has raised genuine issues of material fact that preclude the grant of summary judgment. First, there is an issue of fact regarding HP's ability to fire Plaintiff. Defendants' citation to this Court's decision in *Liotard* to support their argument that an entity that may request removal of an employee, but not terminate that employee, is not a joint employer, is disingenuous; it ignores the very next sentences in *Liotard*, which are critical to this case. Specifically Liotard attempted to argue that "an entity's ability even simply to request that the plaintiff be transferred is a relevant factor suggesting that the entity is a joint employer." *Liotard*, 2016 WL 1071034, at *5. Such position was not categorically rejected by this Court, but only rejected as inapplicable to the facts of that case because the cases cited by plaintiff concerned "employees of temporary employment or staffing agencies." *Id.* Such cases, however, are relevant here. Thus, the fact that HP could "request the replacement or removal" of Plaintiff, (*see* SOW §2.11), and did so when he allegedly failed to comply with timekeeping requirements, (*see* Angalora Decl. ¶18 ("HP notified Insight Global of Gilani's repeated failure to comply, and cancelled his assignment on March 30, 2012")), may support a finding of joint employment.

Moreover, Plaintiff contends that after HP "cancelled his assignment", he did not hear from Insight Global and Insight Global did not offer or place him in another position. (*See* Plf. Decl. ¶50.) Instead, Plaintiff ceased receiving payment from Insight Global entirely. (*Id.*) He has raised

genuine issues of fact. *See Liotard*, 2016 WL 1071034, at *5 (noting "when a temporary employee's placement ends, generally, the employee is no longer working or compensated, and the ending of the placement acts as a sort of constructive termination").

Plaintiff has also raised genuine issues of material facts to some of the remaining factors. HP does not dispute that they maintain records of Plaintiff's hours and approved them. (*See* Angalora Rog. Resp. at 2 (admitting that Flaherty reviewed and approved Plaintiff's timesheets)). Additionally, Plaintiff states that he worked in an office that contained an HP logo, only HP employees, and HP equipment, and was given an HP laptop and cellphone for work. (*See* Plf 56.1 ¶10; Plf. Decl. ¶¶25-26; HP Rog. Resp. at Rog. 1.) Plaintiff also contends that he had regular one-on-one reviews of his work, was assigned work from Cowan and Flaherty, and completed his work as HP directed. (*Compare* Plf. Decl. ¶¶28-30, 33; Plf. 56.1 ¶8; Plf. Rog. Resp. at 7 *with Liotard*, 2016 WL 1071034, at *6 (noting difference between telling employees what work to perform, or where and when to perform it, and telling them *how* to perform that work).) Additionally, Plaintiff argues that he was mandated to attend weekly staff meetings, (*id.*), was assigned an HP mentor located in Plano Texas, (*id.*), and was required to complete the "New Hire Training" which consisted of 120 hours of training over a three week period, (*id.*) While not dispositive, these facts, coupled with more, may be indicative of his dual employment with HP. To the extent that Defendants reject Plaintiff's arguments and maintain to the contrary, (*see* Angalora Decl. ¶¶9, 13; Cowan Decl. ¶¶8, 12), the Court declines to resolve such disputes, as doing so would require it to exceed its authority on a motion for summary judgment. Summary judgment is not appropriate.

This outcome is consistent with similar cases in this Circuit dealing with temporary employment situations, particularly where it concerns staffing agencies. *See Williams*, 2017 WL 384787, at *6 (noting that defendant failed to meet summary judgment burden where it relied

solely on contractual language on issue of joint employment, despite plaintiff's conclusory contentions in support of application of joint employer doctrine)[9]; *see also Amarnare*, 611 F.Supp. at 349 (finding defendant Merrill Lynch an employer where plaintiff "was subject to the direction of Merrill Lynch in her work assignments, hours of service, and other usual aspects of an employee-employer relationship"); *Nazario v. Promed Personnel Servs. NY Inc.*, No. 15-CV-6989 (LGS), 2017 WL 2664202, at *9 (S.D.N.Y. Jun. 19, 2017) (denying summary judgment where "though Promed paid Plaintiff's salary, UCP supervised her, controlled her hours and work assignments, decided to hire her and decided not to rehire her"); *Farzan*, 2013 WL 6231615, at *16 (finding joint employer doctrine applicable where "Wells Fargo supervised [plaintiff] on a daily basis, assigned him work, set his schedule . . . ."); *Haight v. NYU Langone Med. Ctr.*, No. 13-CV-4993 (LGS), 2014 WL 2933190, at *12 (S.D.N.Y. Jun. 27, 2014) (noting issues of fact precluded summary judgment).

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED in part and DENIED in part. It is granted insofar as it seeks dismissal of all claims against the Individual Defendants and dismissal of the state law claims against all Defendants. It is denied insofar as it seeks summary judgment on the issue of whether or not HP was Plaintiff's employer under the joint employer doctrine. In light of the fact that the parties were granted limited discovery on the issue of employment prior to briefing this motion, factual discovery on Plaintiff's Title VII and ADEA claims is incomplete. The parties are therefore directed to confer and complete the attached Case Management Plan and submit it to Chambers on or before September 26, 2018.

---

[9] Specifically, the court determined that the defendant could not meet its burden at summary judgment, but nonetheless decided the opinion on plaintiff's inability to properly plead the substantive elements of Title VII and the ADEA and therefore dismissed the claims. *See Williams*, 2017 WL 384787, at 8-9.

13

The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 75. The Clerk of the Court is further respectfully directed to terminate Defendants Mark Angarola, Tim Cowan, and Lisa Mincak, as the SAC is dismissed as against them with prejudice. The Clerk of the Court is also directed to mail a copy of this Opinion and Order to Plaintiff at his address as listed on ECF.

Dated: September 12, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT Rev. May 2014
SOUTHWESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                                                                 **CIVIL CASE DISCOVERY PLAN**
                                          Plaintiff(s),        **AND SCHEDULING ORDER**
            - against -

                                        Defendant(s).    _____ CV _____ (NSR)

-------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge